## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**Alana Harrison,**

*Plaintiff,*

**v.**                                                      **Case No. 3:19-cv-288**
                                                           **Judge Thomas M. Rose**

**Montgomery County, Ohio,**

*Defendant.*

---

**ENTRY AND ORDER GRANTING MOTION TO DISMISS FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM BY DEFENDANT MONTGOMERY COUNTY OHIO, (ECF 17), GRANTING UNOPPOSED MOTION FOR LEAVE TO FILE REPLY TO PLAINTIFF'S 22-PAGE RESPONSE TO DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY AND PLAINTIFF'S SUBMISSION OF ADDITIONAL SUPPLEMENTAL AUTHORITY BY DEFENDANT MONTGOMERY COUNTY OHIO, (ECF 23), AND GRANTING UNOPPOSED MOTION FOR LEAVE TO FILE RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY (ECF 24) BY DEFENDANT MONTGOMERY COUNTY OHIO, (ECF 25), AND TERMINATING CASE.**

---

Pending before the Court are Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim by Defendant Montgomery County Ohio, (ECF 17), Unopposed Motion for Leave to File Reply to Plaintiff's 22-Page Response to Defendant's Notice of Supplemental Authority and Plaintiff's Submission of Additional Supplemental Authority by Defendant Montgomery County Ohio, (ECF 23), and Unopposed Motion for Leave to File Response to Plaintiff's Notice of Supplemental Authority (ECF 24) by Defendant Montgomery County Ohio. (ECF 25).

1

Plaintiffs are a putative class of individuals who failed to pay property tax in Ohio. The Montgomery County Treasurer prosecuted a tax foreclosure against the properties and then transferred the properties to a land reutilization corporation. Plaintiffs allege that the value of their property exceeded the taxes owed and that Defendant Montgomery County violated the federal and state Takings Clauses when the County transferred that property without providing compensation for the value that exceeded the tax liabilities. Defendant moved to dismiss, arguing that the Court does not have jurisdiction over the controversy and that Plaintiffs do not state valid claims and that the action is barred by *res judicata*.

I.     **Background**

Named Plaintiff Alana Harrison asserts a taking arising from Defendant Montgomery Treasurer's enforcement of an administrative tax foreclosure proceeding under Ohio Revised Code § 323.65 through 323.79. (Compl. ¶ 6-12 and ¶ 27). Ohio Rev. Code § 323.65, *et seq*., was first adopted by the General Assembly in 2006 in order to expedite the tax foreclosure process for "abandoned" lands. (Amd. Compl. ¶ 6). Under this statutory procedure, if a tax delinquent property involves "abandoned" land, as defined by Ohio Revised Code § 323.65(A), the County Treasurer may initiate a foreclosure proceeding with the county Board of Revision, which upon any adjudication of foreclosure, may order disposition of the abandoned land by public auction or by other conveyance in the manner prescribed by sections 323.65 to 323.79 of the Revised Code. See Ohio Rev. Code § 323.66(A).

Under Ohio Rev. Code § 323.65(A), the administrative tax foreclosure procedures set forth in Ohio Rev. Code § 323.65 through Ohio Rev. Code § 323.79 only apply to tax delinquent lands "that are unoccupied and that first appeared on the [tax delinquent] list compiled under division

2

(C) of section 323.67 of the Revised Code, or the delinquent tax list or delinquent vacant land tax list compiled under section 5721.03 of the Revised Code . . . at any time after the county auditor makes the certification of the delinquent land list under section 5721.011 of the Revised Code." Id. Moreover, the subject property must be "unoccupied," which is defined by Ohio Rev. Code § 323.65(F) to mean: "(a) [n]o building, structure, land, or other improvement that is subject to taxation and that is located on the parcel is physically inhabited as a dwelling; (b) no trade or business is actively being conducted on the parcel by the owner, a tenant, or another party occupying the parcel pursuant to a lease or other legal authority, or in a building, structure, or other improvement that is subject to taxation and that is located on the parcel; [or] (c) [t]he parcel is uninhabited and there are no signs that it is undergoing a change in tenancy and remains legally habitable, or that it is undergoing improvements, as indicated by an application for a building permit or other facts indicating that the parcel is experiencing ongoing improvements." Id.

Traditional tax foreclosures in Ohio follow the same basic procedure as routine mortgage foreclosures. The county treasurer files a lawsuit in the common pleas court, a judgment of foreclosure is rendered, and the property is sold at public auction. See Ohio Rev. Code § 323.25. The sales proceeds are then distributed among the various interest holders, starting with the county treasurer who holds a first lien position for real estate taxes. See Ohio Rev. Code § 5721.10. In other words, the treasurer commences a traditional tax foreclosure as an effort to collect tax dollars and, by the end of the process, actually collects delinquent real estate taxes. In the process, the property is offered for sale at public auction where the property owner may, through the competitive bidding process, realize on the equity she possesses in the property. Ohio Rev. Code § 2329.44.

The statute's expedited tax foreclosure process is different. First, tax foreclosure cases may be prosecuted in the county's board of revision instead of the court of common pleas. Second, although an expedited foreclosure starts in the usual way, the process soon comes to a fork in the road. Before any final action is taken on the complaint, the county treasurer—as plaintiff—must make a choice whether to collect the delinquent taxes owed through a judicial sale or to invoke the alternative redemption period of Ohio Rev. Code § 323.78 and waive all taxes and assessments owed on the parcel. Indeed, Ohio Rev. Code § 323.78(B) provides that "after the expiration of the alternative redemption period[,] the parcel shall be transferred by deed directly to the. . . county land reutilization corporation without appraisal and without a sale, free and clear of all impositions and any other liens on the property, which shall be deemed forever satisfied and discharged." Because Ohio Rev. Code § 323.78(A) gives the county treasurer the sole discretion to ask the board of revision to directly transfer the property to an electing subdivision instead of ordering a judicial sale and the treasurer's decision to invoke Ohio Rev. Code § 323.78, the county treasurer controls whether the statute's foreclosure process results in the collection of tax dollars or provides inventory for an electing subdivision's Land Reutilization Program. Finally, a property may be directly transferred pursuant to Ohio Rev. Code § 323.78 "regardless of whether the value of the taxes, assessments, penalties, interest, and other charges due on the parcel, and the costs of the action, exceed the fair market value of the parcel."

In creating this expedited foreclosure procedure for abandoned, tax delinquent lands, the General Assembly implemented a number of procedural safeguards to protect the rights of affected property owners who want to contest the foreclosure or pay their delinquent taxes. First, with respect to service of process, Ohio Rev. Code § 323.66(C) provides that "the clerk of court, in the

same manner as in civil actions, shall provide summons and notice of hearings, maintain an official

case file, docket all proceedings, and tax as costs all necessary actions in connection therewith in

furtherance of the foreclosure of abandoned land" under sections 323.65 to 323.79. Id.   Moreover,

under Ohio Rev. Code § 323.69(B)(1), the Summons served by the clerk of courts must provide

notice to "the addressee that delinquent taxes stand charged against the abandoned land," and that

the subject property may be sold or transferred "in the manner prescribed in sections 323.65 to

323.79 of the Revised Code," and that the owner or other addressee may redeem the land by paying

the total of the impositions against the land at any time before confirmation of sale or transfer of

the parcel as prescribed in sections 323.65 to 323.79 of the Revised Code or before the expiration

of the alternative redemption period, as may be applicable to the proceeding." Id.

Second, the relevant statutes provide that an affected property owner who wants to contest

the tax foreclosure action shall have the right to obtain an automatic transfer of the proceeding to

the court of common pleas. See Ohio Rev. Code § 323.691 and Ohio Rev. Code § 323.70. In

particular, Ohio Rev. Code § 323.691 provides that a county board of revision may order that a tax

foreclosure proceeding filed under § 323.69 be transferred to the court of common pleas or to a

municipal court with jurisdiction over the property, upon a motion filed by the record owner of the

parcel or the county prosecuting attorney, or upon its own motion. See Ohio Rev. Code §

323.691(A).   Moreover, Ohio Rev. Code § 323.70(B) provides that "[i]f, on or before the

fourteenth day after service of process is perfected under division (B) of section 323.69 of the

Revised Code, a record owner files with the clerk of court a motion requesting that the county

board of revision order the case be transferred to a court pursuant to § 323.691 of the Revised

Code, the board shall, without conducting a hearing on the matter, promptly transfer the case for

foreclosure of that land to a court pursuant to section 323.691 of the Revised Code to be conducted in accordance with the applicable laws." See Ohio Rev. Code § 323.70(B). Thus, the record owner of the parcel has the automatic right to transfer the case to the common pleas court under Ohio Rev. Code § 323.70(B).

Third, the relevant statutes provide that the affected property owner or other interested parties shall have the right to terminate the foreclosure proceedings at any time by paying all outstanding taxes in full, or by showing that the impositions have been paid in full. Ohio Rev. Code § 323.72(A)(2). In this regard, Ohio Rev. Code § 323.72(B) provides: "If the record owner, lienholder, or other person shows by a preponderance of the evidence that all impositions against the parcel have been paid, the board shall dismiss the complaint and remove the parcel of abandoned land from the abandoned land list, and that land shall not be offered for sale or otherwise conveyed under sections 323.65 to 323.79 of the Revised Code." Id. Moreover, Ohio Rev. Code § 323.72(B) provides that "if the board determines that the impositions have been paid, then the board, on its own motion, may dismiss the case without a hearing." Id.

Fourth, under the relevant statutes, a property owner has been granted a statutory right of redemption, which terminates upon the filing of the confirmation of sale for abandoned land sold at public auction pursuant to § 323.73 of the Revised Code, or upon the filing of the county board of revision's order to the sheriff to transfer the abandoned land to an electing subdivision, such as a county land reutilization corporation, under §§ 323.73(G) or 323.74 of the Revised Code. See Ohio Rev. Code § 323.76. If the County Treasurer invokes the alternative redemption period under section 323.78, however, then Ohio Rev. Code § 323.65(J) provides that the property owner shall have an additional twenty (28) days after the Order of Foreclosure to exercise the statutory

right of redemption. See Ohio Rev. Code § 323.65(J). Thus, for "abandoned" lands ordered transferred under Ohio Rev. Code § 323.78, the statute provides the property owner or other interested party with an additional 28- day period to redeem their interest in the property by paying their taxes before any direct transfer of land to an electing subdivision can occur. See Ohio Rev. Code § 323.78. If the property owner does not exercise the statutory right of redemption, however, then Ohio Rev. Code § 323.76(C)(2) provides that any common law or statutory right of redemption shall terminate "upon the expiration of such alternative redemption period." Id.

In this regard, this statutory right to transfer tax delinquent land to an "electing subdivision" under Ohio Rev. Code § 323.78 is only applicable to "abandoned" lands, as defined by Ohio Rev. Code § 323.65(A). A property owner can prevent the direct transfer of land under Ohio Rev. Code § 323.78 by showing that the land is not abandoned, by paying the outstanding taxes and impositions (or entering into a payment plan), or by exercising their statutory right of redemption before the expiration of the 28-day alternative redemption period. But, if the property is "abandoned land" and the property owner fails to pay the outstanding taxes owed before the expiration of the 28-day alternative redemption period, then Ohio Rev. Code § 323.78 provides that "* * * any statutory or common law right of redemption in the parcel by its owner shall be forever terminated after the expiration of the alternative redemption period and that the parcel shall be transferred by deed directly to the requesting municipal corporation, township, county, school district, community development corporation, or county land reutilization corporation without appraisal and without a sale, free and clear of all impositions and any other liens on the property, which shall be deemed forever satisfied and discharged." Id. (emphasis added). Moreover, Ohio Rev. Code § 323.78 provides that "[t]he court or board of revision shall order such a transfer

regardless of whether the value of the taxes, assessments, penalties, interest, and other charges due on the parcel, and the costs of the action, exceed the fair market value of the parcel," and that "[n]o further act of confirmation or other order shall be required for such a transfer, or for the extinguishment of any statutory or common law right of redemption." Id. Thus, once a foreclosure order has been issued and the 28-day alternative redemption period has expired, then the property owner loses all right, title or interest in the abandoned, tax delinquent property. See Ohio Rev. Code § 323.76(C)(2) and Ohio Rev. Code § 323.78.

Finally, the statutory scheme provides an aggrieved party with the right to file an administrative appeal of a final order of foreclosure under Chapters 2505 and 2506 of the Revised Code. See Ohio Rev. Code § 323.79 ("Any party to any proceeding instituted pursuant to sections 323.65 to 323.79 of the Revised Code who is aggrieved in any of the proceedings of the county board of revision under those sections may file an appeal in the court of common pleas pursuant to Chapters 2505 and 2506 of the Revised Code upon a final order of foreclosure and forfeiture by the board"). An administrative appeal under Ohio Rev. Code § 323.79 differs from a traditional Ohio Rev. Code 2506 appeal, however, because the appeal under Ohio Rev. Code § 323.79 "shall proceed as an appeal *de novo* and may include issues raised or adjudicated in the proceedings before the county board of revision, as well as other issues that are raised for the first time on appeal and that are pertinent to the abandoned land that is the subject of those proceedings." Id. Thus, Ohio Rev. Code § 323.79 appears to allow an aggrieved party to file new, constitutional claims arising from the tax foreclosure proceedings.

Plaintiff's takings claims arise from an administrative tax foreclosure proceeding that was filed by the Montgomery County Treasurer with the Montgomery County Board of Revision on

August 30, 2017, Case No. 2017-BR-0653 (the "Tax Foreclosure Action"). (Amd. Compl. ¶ 27-34). Attached to the complaint filed in Plaintiff's Foreclose in state court were two affidavits signed by the City of Dayton's Director of Planning and Community Development, Aaron Sorrell, averring that the Land Bank determined that its acquisition of Plaintiff's property was "necessary for the implementation of an effective land reutilization program." (See, Motion, Ex. 2 (Ex.1-A and 1-B).)

The owners of the Property failed to pay their real estate taxes at the time when the Tax Foreclosure Action was filed, and that the total amount due and owing, as reflected in the Findings of Fact issued by the Montgomery County Board of Revision, was $19,664.44. (Amd. Compl. ¶ 31); (Def. Ex. 6, Findings of Fact). Thus, in accordance with the tax foreclosure procedures set forth in the Ohio Revised Code, the Montgomery County Board of Revision issued an Adjudication of Foreclosure, and Order to the Sheriff to transfer the Property to the Montgomery County Land Reutilization Corporation. (Amd. Compl. ¶ 31) (Def. Ex. 5 and 7).

Plaintiff Alana Harrison previously owned a one-half interest in the Property, and filed an Answer in the Tax Foreclosure Action that "expressed a desire to save the Property from foreclosure." (Amd. Compl. ¶ 28-29). In this regard, Harrison admits in her Complaint that she received the "summons and complaint" in the Tax Foreclosure Action, and that she filed an Answer with the Montgomery County Board of Revision. (Id. at ¶ 29). Harrison did not exercise her statutory right to transfer the case to the Court of Common Pleas under Ohio Rev. Code § 323.70 and did not file an administrative appeal from the tax foreclosure order under Ohio Rev. Code § 323.79. (See Def. Ex. 1, Certified Copy of Docket). Moreover, she did not pay her taxes (or enter into a payment plan), and never exercised her statutory right of redemption under Ohio Rev. Code

§ 323.78. (Id.)   Thus, upon the issuance of foreclosure order and the expiration of the alternative redemption period, all of Harrison's rights, title, and interest in the Property were released and forever terminated under Ohio Rev. Code § 323.78.

The summons served on Harrison provided notice that, if a foreclosure is ordered, "the parcel(s) will either be sold at public auction or transferred or conveyed to a political subdivision, land reutilization corporation, school district or eligible community development organization per Ohio Revised Code §§ 323.65 – 323.79, unless redeemed by the owner of record or any interested party." (See Def. Ex. 3, pg. 5).   Moreover, the Summons provided notice that the record owner or other interested party may redeem the parcels by paying all outstanding taxes "at any time prior to the expiration of the alternative redemption period under Ohio Revised Code § § 323.65(J) and 323.78(A)-(C), or otherwise prior to confirmation of sale, transfer or conveyance of the parcel(s)." (Id.)   Further, the Summons provided notice that Harrison "may raise issues regarding service of process and whether the parcel(s) are abandoned, or petition for transfer of the attached Complaint to a court of competent jurisdiction, per Ohio Revised Code § 323.72 *et seq*." (Id.)

Other than filing an Answer, Harrison never contested that the land was "abandoned" and that outstanding taxes were owed, and never exercised her statutory right of redemption before the expiration of the alternative redemption period.[1]   Neither did Harrison request a transfer of the Tax Foreclosure Action to the Montgomery Court of Common Pleas under Ohio Rev. Code § 323.691 or Ohio Rev. Code § 323.70 nor file a timely appeal under Ohio Rev. Code § 323.79 with

---

[1] Plaintiff was unable to pay the taxes and on August 20, 2018, the Board issued three separate orders: (1) an Adjudication of Foreclosure, which found that Plaintiff's property was subject to foreclosure under the statute; (2) a Finding of Fact as to Value, in which the Board found that the value of the properties exceeded the total impositions; and (3) an order directing the Sheriff to issue a deed transferring Plaintiff's property to the Land Bank. (Motion to Dismiss, Exs. 5-7.)

the Montgomery County Court of Common Pleas.   Plaintiff alleges that none of the orders issued by the Board of Revision were served on Harrison. (Motion to Dismiss, Ex. 1.3)   The Montgomery County Sheriff transferred the properties to the Land Bank by deed dated August 31, 2018. (Am. Compl., ¶ 32.)

On June 21, 2019, the Supreme Court decided *Knick v. Tp. of Scott*, 139 S. Ct. 2162, 2171 (2019), holding that property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it, and therefore may bring his claim in federal court under § 1983 at that time; overruling *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).

Harrison filed a federal court action against Montgomery County, alleging "takings" claims that based entirely upon the County's lawful enforcement of the tax foreclosure laws. (Amd. Compl. ¶ 34).   Her first claim is for takings in violation of Fifth and Fourteenth Amendment to the United States Constitution.   Her second claim asserts violation of Article I, § 19 of the Ohio Constitution.[2]   Defendant has filed a Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim. (ECF 17).

## II.    Standard

### I.    Standard of Review

Before the Court may determine whether a plaintiff has failed to state a claim upon which

---

[2] Also pending before the Court are Unopposed Motion for Leave to File Reply to Plaintiff's 22-Page Response to Defendant's Notice of Supplemental Authority and Plaintiff's Submission of Additional Supplemental Authority by Defendant Montgomery County Ohio, (ECF 23), and Unopposed Motion for Leave to File Response to Plaintiff's Notice of Supplemental Authority (ECF 24) by Defendant Montgomery County Ohio. (ECF 25).   These motions will be granted.

relief may be granted, under a Rule 12(b)(6) motion, the Court must first resolve whether it may exercise jurisdiction over the subject matter. *City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F. Supp. 971, 975 (S.D. Ohio 1993). "Federal courts may exercise jurisdiction only where an actual 'case or controversy' exists." *Parsons v. U.S. Dep't of Justice*, 801 F. 3d 701, 709-10 (6th Cir. 2015) (citing U.S. Const. art. III, § 2). The case or controversy requirement has been interpreted as requiring "a litigant have standing to invoke the jurisdiction of the federal courts." *Parsons*, 801 F. 3d at 710 (internal citation and quotation marks omitted). In other words, this Court must first determine the 12(b)(1) motion before it may determine the 12(b)(6) motion before it.

### A. Subject-Matter Jurisdiction Standard of Review

When subject-matter jurisdiction is challenged, the party claiming the jurisdiction bears the burden of proving it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Rule 12(b)(1) provides that the defendant may file a motion to dismiss based on a "lack of jurisdiction over the subject matter." The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *Wayside Church v. Van Buren County*, 847 F. 3d 812, 816-17 (6th Cir. 2017) (citing *Carrier Corp. v. Outokumpu Oyj*, 673 F. 3d 430, 440 (6th Cir. 2012). A facial attack questions merely the sufficiency of the pleading." *Id.* (citing *Gentek Bldg Prods., Inc. v. Sherwin-Williams Co.*, 491 F. 3d 320, 330 (6th Cir. 2007)). This requires the Court to "take[] the allegations in the complaint as true." *Id.*

### B. Failure to State a Claim Standard of Review

"The purpose of a Rule 12(b)(6) motion to dismiss is to allow a defendant to test whether,

as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 897 (S.D. Ohio 2013) (citing *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993)). Moreover, the purpose of the motion is to test the formal sufficiency of the statement of the claim for relief. *Id.* "[F]or the purposes of a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its allegations taken as true." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232 (1974)).

To survive a 12(b)(6) motion to dismiss, a plaintiff must provide more than labels and conclusions; a formulaic recitation of the elements of a cause of action is not enough. *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007). Further, the factual allegations must be enough to raise a right to relief above the speculative level and must also do something more than merely create a suspicion of a legally cognizable right. *Id.* However, the Court is not bound to accept as true a legal conclusion couched as factual allegation or unwarranted factual inferences. *Id.* at 555; *Morgan v. Church's Fried Chicken*, 829 F. 2d 10, 12 (6th Cir. 1987); *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Moreover, only well-pleaded facts are construed liberally in favor of the party opposing the motion to dismiss. *Lillard v. Shelby County Bd. Of Educ.*, 76 F. 3d 716, 726 (6th Cir. 1996).

## III.    Analysis

## A.    Jurisdiction

Defendant argues that the Tax Injunction Act, 28 U.S.C. § 1341, prohibits this Court from exercising jurisdiction. But Plaintiffs seek only monetary damages, while the Tax Injunction Act limits jurisdiction over actions seeking injunctive and declaratory relief. See

*Tarrify Properties, LLC v. Cuyahoga Cty*., Ohio, 1:19-CV-2293, 2020 WL 4043105, at *2 n.24

(N.D. Ohio July 17, 2020)(Gwin, J.) (citing *Wayside Church v. Van Buren County*, 847 F.3d 812,

822 (6th Cir. 2017) (citing *Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n*, 515 U.S. 582,

586-87 (1995)).   "[T]he TIA is not keyed to all activities that may improve a State's ability to

assess and collect taxes.   Such a rule would be inconsistent not only with the text of the statute,

but also with our rule favoring clear boundaries in the interpretation of jurisdictional statutes. See

*Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).   The TIA is keyed to the acts of assessment,

levy, and collection themselves[.]" *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 11-12 (2015).

      The transfer is not part of the County's tax administration because the County does not

collect any tax when it transfers a property.   It does the opposite.   By statute, when the County

transfers properties under property-transfer mechanism, the County forfeits any right to collect

delinquent taxes when it transfers the property, as "all impositions and any other liens on the

property [are] deemed forever satisfied and discharged." *Tarrify Properties*, at *3 (quoting Ohio

Rev. Code § 323.78(B)); see also *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 10 (2015)

("'[C]ollection' is the act of obtaining payment of taxes due.").   The property-transfer

mechanism stops tax collection from both the entity taking the property and from the earlier

owner who owed the taxes.   A remedy that waives tax payments is not so imbedded within a

state's tax system to be isolated from federal courts' review. Id.

      Comity is a federal common-law doctrine that "governs constitutional challenges to state

tax administration." *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 541 (6th Cir. 2004).   When

applied, comity "prohibits 'taxpayers...from asserting § 1983 actions against the validity of state

tax systems in [the lower] federal courts.'" *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 541 (6th

Cir. 2004). "[O]nly one analysis is required" to review the Tax Injunction Act and comity's limit on jurisdiction. Id. As discussed below, the principle of comity does not bar the Court from reviewing this case, so the Tax Injunction Act would not either. *Tarrify Properties*, at *2 n.24.

The transfer is a land redevelopment program that gives tax-delinquent properties to non-governmental entities. The act creating the foreclosure-transfer mechanism described its purpose as "facilitat[ing] the reclamation, rehabilitation, and reutilization of vacant, abandoned, tax-foreclosed, or other real property." 127th General Assembly, SB 353, eff. April 7, 2009. The Court has jurisdiction to consider the constitutionality of these transfers. See *Tarrify Properties*, at *3.

## B.  *Res Judicata*

Defendants seek dismissal of Harrison's takings claims on the basis of *res judicata*. Under the doctrine of *res judicata*, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp*., 73 Ohio St.3d 379, 653 N.E.2d 226 (1995), syllabus. In determining whether *res judicata* applies, this Court must apply Ohio law. *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997). Courts ask whether the following four elements are satisfied:

> (1) a prior, final valid decision on the merits by a court of competent jurisdiction;
> (2) a second action involving the same parties, or their privies, as the first;
> (3) a second action raising claims that were or could have been litigated in the first action; and
> (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Hapgood*, 127 F.3d at 493 (applying Ohio law).

With respect to the first element, the doctrine of *res judicata* not only applies to state court judgments, it applies to final administrative orders that are subject to judicial review under Ohio law. See *Carroll v. City of Cleveland*, 522 Fed. App'x 299, 305-306 (6th Cir. 2013) (holding that *res judicata* applied to a final administrative order that was not timely appealed to the court of common pleas under Ohio Revised Code § 2506). See also *Tarrify Properties, LLC v. Cuyahoga Cty., Ohio*, No. 1:19-CV-2293, 2020 WL 4043105, at *4 (N.D. Ohio July 17, 2020)(Gwin, J.) (citing *Carroll v. City of Cleveland*, 522 F. App'x 299, 303-04 (6th Cir. 2013); and *Wade v. City of Cleveland*, 456 N.E.2d 829, 831-32 (Ohio 1982)). Thus, the first element of *res judicata* is met.

Plaintiff also contends that the parties to this action are not the same as those in the Board of Revision case. With respect to this element, in the foreclosure action, the County Treasurer enjoys privity with the County. *Kirkhart v. Keiper*, 805 N.E.2d 1089, 1092 (Ohio 2004). Ohio applies a broad definition of privity and has stated that "a mutuality of interest, including an identity of desired result, may create privity." Id. (internal quotation marks omitted). The County Treasurer represents the County when prosecuting the foreclosures. The County Treasurer and the County are in privity. *Tarrify Properties*, at *4. The alleged takings claim involves the same parties, and arose from the same transaction or occurrence that was the subject matter of the Tax Foreclosure Action. (Amd. Compl. ¶ 27-34).

As regards the third element, Harrison could have litigated her takings claim in the prior proceeding by filing a timely administrative appeal under Ohio Revised Code § 323.79. See *Carroll*, 522 Fed. App'x at 303-07 (holding that *res judicata* applied to an administrative order

where, as here, the plaintiffs failed to prosecute their takings claims via a timely administrative appeal filed under Ohio Revised Code § 2506).

Plaintiff asserts that her claim was not ripe until after the Board of Revision proceedings were concluded and the title to the property was subsequently transferred. Here, the administrative appeal granted by Ohio Revised Code § 323.79 expressly incorporates the administrative appeal process set forth in Chapters 2505 and 2506 of the Ohio Revised Code. The judicial remedy provided by Ohio Revised Code § 323.79, in fact, is significantly broader than Ohio Revised Code Chapters 2505 and 2506 because it provides for *de novo* review of the tax foreclosure order and expressly allows for the prosecution of new claims for the first time in the court of common pleas. See Ohio Revised Code § 323.79; see also *Johnson*, 2015 WL 4743815, *5-6. As in *Carroll*, Harrison cannot show that she could not have brought her alleged takings claims in state court through the filing of a timely appeal of the final administrative order. Not only has Harrison abandoned her property, she has abandoned her claim.

As to the fourth element, Plaintiff asserts the transaction at issue in the foreclosure related to real estate taxes and that her current claim does not relate to taxes. Ohio defines a "transaction" as a "common nucleus of operative facts." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (citing *Grava v. Parkman Twp*., 653 N.E.2d 226, 229 (Ohio 1995)). Both the foreclosure and this case rely on the same common set of facts, so this element is satisfied. *Tarrify Properties*, at *4.

Thus, the Court concludes that *res judicata* bars Harrison from presenting her takings claims in a subsequent federal court proceeding. The Court notes that *Tarrify,* found "it would be inappropriate to block any challenge to the transfer of property worth substantially more than the

taxes assessed based solely on the limited foreclosure proceedings." *Tarrify* , at *5.   *Tarrify* relies for this proposition on *State ex rel. Estate of Miles v. Vill. of Piketon*, 903 N.E.2d 311, 317 (Ohio 2009) and *Jacobs v. Teledyne, Inc.*, 529 N.E.2d 1255, 1259 (Ohio 1988).   *Estate of Miles* declined to apply *res judicata* because privity was found between a former police officer served at his home residence and his former employer, who was not a party.   *Jacobs* involved a claimant who was not yet totally disabled when he first applied for disability, but later was.

Neither strained privity nor change of material fact is present in this case.   While "[t]he binding effect of *res judicata* has been held not to apply when fairness and justice would not support it," *State ex rel. Estate of Miles v. Vill. of Piketon*, 903 N.E.2d 311, 317 (Ohio 2009), there is always an aspect of fairness and justice implicated by *res judicata*.   The purpose of *res judicata* is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources. See *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398-99 (1981); *James v. Gerber Products Co*., 587 F.2d 324, 327-28 (6th Cir. 1978).

A consideration of fairness to plaintiff would require a countervailing examination of the costs on society that Ohio's expedited tax foreclosure system addresses:

> Studies have shown that vacant and abandoned buildings are magnets for criminal activity and that reducing the number of these buildings reduces the crime rate.   Thousands of fires, causing tens of millions of dollars in damage, are also reported in vacant structures each year.   Vacant and abandoned properties also remain off tax rolls and lower the value of surrounding properties, further eroding the real property tax base.   Perhaps most significantly, vacant properties signal that a neighborhood is on the decline, undermine a neighborhood's sense of community, and discourage further investment.   Moreover, such disinvestment often spreads across neighborhoods and worsens the overall health of a city.   For these reasons, neighborhoods, schools, and city governments bear the greatest costs induced by vacant and abandoned property.

Thomas J. Fitzpatrick IV, *Ohio's Land Bank Legislation: Modernizing an Aged Model*, J. AFFORDABLE HOUSING & COMMUNITY DEV. L., Winter 2010, at 127, 129–30.

Ohio's administrative and judicial review scheme provides a delinquent taxpayer with multiple opportunities to challenge a direct transfer in the tax foreclosure proceeding itself, and to raise any and all takings claims and defenses in the court of common pleas either by transferring the case under Ohio Revised Code §§ 323.69 or 323.70, or by filing an administrative appeal under Ohio Revised Code § 323.79. All delinquent taxpayers have the ability to contest a direct transfer in the underlying tax foreclosure proceeding by demonstrating that the property is occupied, by paying their taxes, or by entering into a payment plan. Moreover, they have the right and the ability under Ohio Revised Code §§ 323.69 and 323.70 to transfer the Board of Revision tax foreclosure proceeding to the court of common pleas during the tax foreclosure proceeding itself, where they can raise any and all constitutional defenses and counterclaims in the same manner as any other judicial proceeding.

Unlike the plaintiff in *Tarrify*, Harrison's Amended Complaint does not allege that she was deprived of the opportunity to contest the direct transfer during the tax foreclosure proceeding itself. Harrison was served with the Complaint and Summons in this case, and filed an Answer with the Montgomery County Board of Revision. (ECF 15, Amd. Compl. ¶ 29, PageID 174). While she was aware of the Tax Foreclosure Action and should have known of the legal consequences of the Tax Foreclosure Action, Harrison never exercised her statutory right to transfer the case to the Court of Common Pleas under Ohio Rev. Code § 323.70 and did not file a timely administrative appeal from the direct transfer order under Ohio Rev. Code § 323.79. (See ECF 17-1, Def. Ex. 1, Certified Copy of Docket). Moreover, she did not pay her taxes (or enter

into a payment plan), and never exercised her statutory right of redemption under Ohio Rev. Code § 323.78. (Id.). Because Defendant has met the elements of *res judicata*, Plaintiff's takings claim is dismissed.

Plaintiff's state-law claim for damages for an alleged taking under Article I, Section 19 of the Ohio Constitution also will be dismissed because the Ohio Supreme Court has held that the proper remedy for the involuntary taking of private property under the Ohio Constitution is a petition for writ of mandamus. See *State ex rel. Cuyahoga Lakefront Land, L.L.C. v. Cleveland*, 2016-Ohio-7640, ¶¶ 12-13, 148 Ohio St.3d 531, 534, 71 N.E.3d 1016, 1018 ("Under Ohio law, '[m]andamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged.'") (quoting *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011- Ohio-6117, 958 N.E.2d 1235, ¶ 53). In this regard, the Ohio Supreme Court has never held that the Ohio Constitution provides a private right of action for damages. See *Provens v. Stark County Board of Mental Retardation & Developmental Disabilities*, 64 Ohio St. 19-2883d 252 (1992). Thus, to the extent that Harrison alleges a claim for the involuntary taking of property under Article I, Section 19 of the Ohio Constitution, then her remedy for the alleged taking would be the filing of a petition for writ of mandamus in state court, not a claim for damages. See *Cleveland v. Martin*, 8th Dist. Cuyahoga No. 85374, 2005-Ohio-6482, ¶ 22-23 (affirming dismissal of takings claim for damages because the "proper legal remedy" for an alleged taking under Ohio law is a petition for writ of mandamus, and no "private right of action for damages exists separate and distinct from a mandamus action"); see also *Tarrify Properties*, at *5.

IV. **Conclusion**

Unopposed Motion for Leave to File Reply to Plaintiff's 22-Page Response to Defendant's Notice of Supplemental Authority and Plaintiff's Submission of Additional Supplemental Authority by Defendant Montgomery County Ohio, (ECF 23), and Unopposed Motion for Leave to File Response to Plaintiff's Notice of Supplemental Authority (ECF 24) by Defendant Montgomery County Ohio. (ECF 25) are also **GRANTED**. Because *res judicata* bars re-adjudication of Plaintiff's claims, and because Plaintiff's asserted Ohio Constitution claims need to be pursued via mandamus, Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim by Defendant Montgomery County Ohio, (ECF 17), is **GRANTED**. The instant case is **TERMINATED** from the dockets of the United States District Court, Western Division at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, August 28, 2020.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

21