# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| **ALANA HARRISON, individually and on behalf of all others similarly situated,** | CASE NO. 3:19-CV-00288-TMR |
| Plaintiff, | JUDGE THOMAS ROSE |
| v. | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| **MONTGOMERY COUNTY, OHIO,** | |
| Defendant. | **TRIAL BY JURY DEMANDED** |

Plaintiff Alana Harrison ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through counsel, and for her Second Amended Class Action Complaint against Defendant Montgomery County, Ohio ("County" or "Defendant") states as follows:

## I.     INTRODUCTION

1.     This case seeks relief relating to the deprivation of Plaintiff's and Class members' (defined below) property rights in real property located within Montgomery County, Ohio. Specifically, the County, acting within its governmental capacity and under color of state law, terminated and seized Plaintiff's and Class members' ownership interest in real estate pursuant to its eminent domain power, but in doing so denied Plaintiff and Class members their constitutional right to just compensation.

## II.     PARTIES, JURISDICTION, AND VENUE

2.     Plaintiff is a natural person and a citizen of the state of Ohio.

3.     The County is a body politic and corporate organized pursuant to, and possessed of such powers, rights, and privileges as are granted by the general law of the State of Ohio.

4.     This action arises under, *inter alia*, 28 U.S.C. § 1983, and the 5th and 14th Amendments to the United States Constitution, and therefore this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

5.      Venue is proper in this District, pursuant to 28 U.S.C. § 1391. Plaintiff and Defendant are residents of this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District as Defendant's conduct complained of herein occurred solely within Montgomery County, Ohio and related to real estate located within Montgomery County, Ohio.

## III.     LEGAL BACKGROUND

6.      Ohio law, including the Ohio Constitution, requires that property taxes be based upon the "true value" of a property.  Ohio Constitution Art. XII, Sec. 2 ("No property, taxed according to value, shall be so taxed in excess of one percent of its *true value* in money for all state and local purposes... Land and improvements thereon *shall be taxed by uniform rule according to value*...") (emphasis added); O.R.C. § 5715.01(C) ("The commissioner shall neither adopt nor enforce any rule that requires true value for any tax year to be any value other than the true value in money on the tax lien date of such tax year or that requires taxable value to be obtained in any way other than by reducing the true value...").  As used in those statutes and the Ohio Constitution, "'true value' means either the amount the property recently sold for on the open market or the amount of an appraisal predicting what that sale price would be." *Dublin City Sch. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St. 3d 212, 217 (Ohio 2014) (collecting authorities); *Ohio Cas. Ins. Co. v. D&J Distrib. & Mfg., Inc.*, 2009-Ohio-3806, ¶ 22 ("The 'true value' of real property is considered to be the amount for which that property would sell on the open market by a willing seller to a willing buyer.").

7.      Ohio law requires county auditors ("Auditors") to determine the true value of a given property to determine taxable value "at least once in each six-year period," and to "revalue and assess at any time all or any part of the real estate…where the auditor finds that the true or taxable values thereof have changed." O.R.C. § 5713.01(B).  Ohio law further requires Auditors

2

to base those valuations on "the best sources of information available" to "determine, as nearly as practicable, the *true value* of the fee simple estate." O.R.C. § 5713.03 (emphasis added).

8.      Ohio law has long recognized that a property owner has a property right in the proceeds of a foreclosure sale that exceed the amount owed on the lien that has been foreclosed. *See, e.g.*, *Culver v. Harper*, 27 Ohio St. 464, 465 (1875); O.R.C. § 2329.44. Prior to 2006, this principle applied equally to foreclosures initiated by private creditors as well as those initiated by taxing bodies.

9.      Specifically, prior to 2006, all Ohio tax foreclosures were conducted in the Court of Common Pleas pursuant to a process that required a foreclosed-upon property to be offered for sale, with the proceeds of the sale used to satisfy any delinquent taxes or liens. *See, e.g.*, O.R.C. § 323.25 ("The county treasurer shall enforce the lien for such taxes by civil action…for the sale of such premises, in the court of common pleas of the county in the same way mortgage liens are enforced.") (as effective March 11, 2014 through September 11, 2008); O.R.C. § 323.28(B) (as effective May 25, 1994 through September 11, 2008). Under that scheme, if a foreclosed-upon property was sold for an amount that exceeded the amount of its tax delinquency, the excess sales proceeds were to be paid to the former property owner. O.R.C. § 323.28(B) ("Any [remaining] balance [after tax sale] shall be distributed according to Section 5721.20 of the Revised Code") (as effective May 25, 1994 through September 11, 2008); O.R.C. § 5721.20 ("Residue of moneys from the sale or foreclosure of lands remaining to the owner…shall [be] retain[ed], and upon demand by such owner, [the treasurer] shall pay such excess to him.") (as effective prior to April 7, 2009).

10.      In 2006, the Ohio General Assembly enacted O.R.C. §§ 323.65, *et seq*. (the "Statute"). Although the Statute still permits a traditional tax foreclosure proceeding to be

commenced in the Court of Common Pleas, it also created an alternative means for county boards of revision to foreclose on real property with outstanding property tax liens if that real property is "abandoned," as defined by O.R.C. § 323.65(A).

11.    A board of revision tax foreclosure conducted pursuant to the Statute does not need to be instituted in court, and is instead conducted by the board of revision itself.  O.R.C. § 323.66.

12.    As in a traditional tax foreclosure, a property that is foreclosed upon pursuant to the Statute may be sold at public auction in order for the county to recover the amount of its tax liens from the proceeds of that sale.  *E.g.*, O.R.C. § 323.72(D); O.R.C. § 323.73.  And, as is the case in traditional tax foreclosure proceedings, when a foreclosed upon property is sold at such a public auction, the Statute gives "any party…claiming a right to distribution of surplus" a "cause of action in the county or municipal court of the jurisdiction in which the land reposes."  O.R.C. § 323.73(C).

13.    Unlike in traditional tax foreclosure actions, however, the Statute also permits a board of revision to order a property be directly transferred to a county land reutilization corporation or electing subdivision, as defined in R.C. 5722.01, that has indicated a desire to acquire the property.  O.R.C. § 323.71(A)(1); O.R.C. § 323.73(G); O.R.C. § 323.78.  When a board of revision orders such a direct transfer, the foreclosed property is not offered for sale at public auction.  O.R.C. § 323.73(G); O.R.C. § 323.78.

14.    When a board of revision directly transfers land to a county land reutilization corporation or electing subdivision for the purpose of redevelopment, instead of selling or acquiring the property to recover unpaid tax amounts, it is exercising its eminent domain power in lieu of exercising its taxing power.  Indeed, when a property is directly transferred pursuant to

O.R.C. § 323.73(G) or O.R.C. § 323.78, all tax liens on the property are forever discharged and no tax monies are collected by the county.

15.     A board of revision may order direct transfer of the property in two scenarios.  The first such scenario is where the total amount of the impositions owed (*i.e.*, all taxes, assessments, and other amounts certified as a lien against the property) exceed the fair market value of the real property, as determined by the Auditor's then-current valuation of that land.  O.R.C. § 323.71(A)(1); O.R.C. § 323.73(G).  The second such scenario is where a county treasurer invokes the "alternative redemption period" pursuant to O.R.C. § 323.78.  This "alternative redemption period" can be invoked regardless of whether the fair market value of the property exceeds the total amount of impositions owed.

16.     When title to property is transferred to a county land reutilization corporation or an electing subdivision pursuant to O.R.C. § 323.78, the entity receiving the property does not pay any consideration for the property. Rather, O.R.C. § 323.78(B) provides that upon such direct transfer of a foreclosed property, the property is transferred "free and clear of all impositions and any other liens on the property, which shall be deemed forever satisfied and discharged."

17.     When a county treasurer waives the county's right to collect the real estate taxes and assessments owed on a property, and elects to have it transferred to a county land reutilization corporation or electing subdivision, the Statute does not provide for the payment of any compensation to property owners, even where the fair market value of the property *exceeds* the total amount of impositions owed.  O.R.C. § 323.78(B).

18.     As such, when a property with a fair market value that *exceeds* the total amount of impositions owed thereon is transferred pursuant to O.R.C. § 323.78(B), the owner of that property

loses more value than what is owed to the county, and, unlike in all other types of foreclosures, has no ability to recoup that surplus equity.

19. To demonstrate, assume a property owner owns a property with a fair market value of $25,000 and $10,000 in property tax impositions against it. If the county board of revision orders transfer of the property to the county land bank or electing subdivision pursuant to O.R.C. § 323.78(B), the property owner loses the entire $25,000 in value because of a $10,000 tax liability – a difference of $15,000. Since this direct transfer occurred in lieu of the collection of the real estate taxes and assessments owed on the property, the county board took property pursuant to its eminent domain power (and *not* its taxing power) without providing just compensation, as required by the 5th and 14th Amendments of the United States Constitution.

## IV.     FACTUAL ALLEGATIONS

20. The Montgomery County Board of Revision ("Board of Revision") is a governmental board of the County, originally created pursuant to O.R.C. § 5715.01(B) to hear complaints and revise assessments of real property for taxation. Pursuant to O.R.C. § 5715.02, each Ohio county's board of revision is composed of three members: the County Treasurer, the County Auditor, and a member of the County's Board of Commissioners.

21. The Montgomery County Land Reutilization Corporation (the "Land Bank") is an Ohio not for profit corporation organized under the authority of O.R.C. § 1724.04 and operates within Montgomery County, Ohio. The Land Bank was incorporated by the Montgomery County Treasurer pursuant to a resolution adopted by the Montgomery County Board of Commissioners in 2011 to foster the return of unproductive land within the County to tax revenue generating status or devotion to public use.

22.     On July 5, 2011, the Montgomery County Board of Commissioners adopted Resolution No. 11-1065, which designated the Land Bank to act as the County's agent under O.R.C. § 1724.10 and O.R.C. Chapter § 5722 for the reclamation, rehabilitation, and reutilization of vacant, abandoned, tax foreclosed, and other property within the County. A true and accurate copy of Resolution No. 11-1065 is attached hereto as Exhibit A.

23.     Thereafter, the Land Bank and the County entered into an Agreement and Plan (the "Agreement") that authorized the Land Bank to exercise on behalf of the County the powers granted by O.R.C. §§ 1724.02 and 1724.10 and O.R.C. Chapter 5722. A true and accurate copy of the Agreement and Montgomery County Board of Commissioners' Resolution No. 11-1640, which approved and authorized the Agreement, are attached hereto collectively as Exhibit B.

24.     Under the Agreement, the Land Bank was designated by the County to, *inter alia*,

   a)     Obtain, hold, and manage vacant, abandoned, or tax-foreclosed real property for reclamation, rehabilitation, and reutilization;

   b)     Assist governmental entities and others to assemble, clear, and clear the title of vacant, abandoned, or tax-foreclosed real property;

   c)     Promote economic and housing development in the County;

   d)     Advance, encourage, and promote the industrial, economic, commercial, and civic development in the County.

25.     In furtherance of its objectives, the Land Bank has adopted Property Policy Guidelines for its property acquisition, disposition, and banking activities. A true and accurate copy of the Guidelines (adopted April 21, 2015) is attached hereto as Exhibit C.

26.     Pursuant to O.R.C. § 1724.03, the Montgomery County Treasurer is a permanent member of the board of directors of the Land Bank. Currently, two of three Montgomery County Commissioners are also members of the board of directors of the Land Bank.

27.     Since 2011, the Montgomery County Treasurer has commenced nearly 3,200 delinquent tax foreclosure cases pursuant to the Statute before the Board of Revision.

28.     Upon information and belief, in virtually every case in which a judgment of foreclosure was entered, the real property was transferred directly to the Land Bank or an electing subdivision.

29.      In a substantial majority of those cases—perhaps in as many as 85%—the Montgomery County Treasurer invoked the alternative redemption period contained in O.R.C. § 323.78.

30.     In a substantial number of tax foreclosure cases before the Board of Revision (including Plaintiff's tax foreclosure case), the Montgomery County Treasurer (or another party) petitioned the Board of Revision, pursuant to O.R.C. § 323.71(A), to determine whether the fair market value of the property at issue exceeded the amount of impositions thereon.

31.     In these cases, after conducting a hearing in accordance with the provisions of O.R.C. § 323.71(A), the Board of Revision issued *Findings of Fact as to Value* ("Valuation Findings").  *See*, Valuation Findings entered in Plaintiff's foreclosure case, attached hereto as Exhibit D.

32.     In relevant part, the Board of Revision's Valuation Findings stated that "based on the preponderance of available evidence, the Board finds that the fair market value of the parcel(s) is/are [amount]."  *See*, Exhibit D.

33.     In each case in which it invoked the alternative redemption period contained in O.R.C. § 323.78, the Montgomery County Treasurer knowingly waived its right to collect real estate taxes and assessments charged against the property in exchange for providing the Land Bank

or an electing subdivision with real estate to use in furtherance of its economic development objectives.

34.    Although O.R.C. § 323.78(B) states that a direct transfer can be ordered "regardless of whether the value of the [impositions] exceed the fair market value of the parcel," the County has a pattern and practice of only invoking the alternative redemption period contained in O.R.C. § 323.78 in circumstances where O.R.C. § 323.73(G) does *not* apply.  In other words, at least in Montgomery County, direct transfers pursuant to O.R.C. § 323.78 only occur in tax foreclosure cases where the Auditor's valuations *exceed* the amount of the impositions at issue.

35.    Plaintiff's and Class members' properties were all directly transferred pursuant to O.R.C. § 323.78 or O.R.C. § 323.73(G).

36.    At the time Plaintiff's and Class members' properties were directly transferred, the fair market values of those properties exceeded the amount of the impositions thereon.  In other words, at the time Plaintiff's and Class members' properties were directly transferred, Plaintiff and Class members had surplus equity in their properties.

37.    Despite the fact that Plaintiff and Class members had surplus equity in their properties at the time they were directly transferred, Plaintiff and Class members did not receive any compensation to account for that surplus equity, nor does the Statute provide them with any method through which they can seek to recover that surplus equity.

38.    The County has taken, and continues to take, the position that Plaintiff and Class members are not entitled to receive any compensation to account for the surplus equity they held in their properties at the time they were directly transferred.  As a result, the County has refused, and continues to refuse, to compensate Plaintiff and Class members for the surplus equity that was

taken from them, or provide them with any method through which they can seek to recover that surplus equity.

39.     Accordingly, Plaintiff's and Class members' properties were taken by the County for public use without just compensation as required by the Fifth Amendment to the United States Constitution (as applied to the County under the Fourteenth Amendment to the United States Constitution).  Plaintiff and Class members will continue to be deprived of these constitutional rights unless and until they receive just compensation for the property of which they were deprived.

40.     Accordingly, the direct transfer provisions of the Statute were, and continue to be, unconstitutionally applied to Plaintiff and Class members by the County.

## V.     FACTS RELEVANT TO PLAINTIFF

41.     On August 30, 2017, the Montgomery County Treasurer instituted a tax foreclosure case before the Board of Revision against Plaintiff, Case No. 2017-BR-0653 ("Plaintiff's Foreclosure Case").  Plaintiff's Foreclosure Case involved real property (the "Property") titled in the name of Plaintiff's deceased mother, Frances Brooks, Plaintiff, and Plaintiff's siblings. The Property comprised two parcels, 3205 Dandridge Ave, Dayton, Ohio, which included a house, and an adjoining vacant lot (Parcel Nos. R72 12204 0015 and R72 12204 0052).

42.     At the time Plaintiff's Foreclosure Case was commenced, Plaintiff was vested with at least an undivided one-half interest in the Property.

43.     After receiving the summons and complaint in Plaintiff's Foreclosure Case, Plaintiff filed an answer with the Board of Revision.  In her answer, Plaintiff expressed a desire to save the Property from foreclosure.

44.     Plaintiff's Foreclosure Case was originally scheduled to be heard on October 27, 2017. After Plaintiff filed her Answer, the case was rescheduled for hearing on December 15,

2017. No notice of the new hearing date was ever provided to Plaintiff. However, no hearing was held on December 15, 2017. Rather, without an order again rescheduling the hearing, and without any notice to Plaintiff, the final hearing was apparently held by the Board of Revision on June 22, 2018.

45.     At the June 22, 2018 hearing, the Board of Revision issued three orders in Plaintiff's Foreclosure Case: (1) *Adjudication of Foreclosure (Direct Transfer)*, which found that foreclosure was appropriate and that the Montgomery County Treasurer had invoked the alternative redemption period of O.R.C. 323.78; (2) *Findings of Fact as to Value*, which found the value of the Property was $22,600.00 and the total impositions on the Property were $19,664.44; and (3) *Order to Sheriff to Transfer to Electing Subdivision with Delivery Instructions to Clerk*, which ordered the Sheriff to issue a deed transferring the Property to the Land Bank.  None of these orders were filed with the clerk of courts until August 20, 2018.

46.     Pursuant to the *Adjudication of Foreclosure (Direct Transfer)* and the *Order to Sheriff to Transfer to Electing Subdivision with Delivery Instructions to Clerk*, on August 31, 2018, the Montgomery County Sheriff issued a deed transferring the Property to the Land Bank.

47.     At the time the Plaintiff's Property was directly transferred pursuant to O.R.C. § 323.78, its fair market value exceeded the amount of the impositions thereon.  Indeed, according to the *Findings of Fact as to Value* issued by the Board of Revision in Plaintiff's Foreclosure Case, the difference between the value of the Property and the amount of the impositions on the Property was $2,935.56.  *See*, Exhibit D.

48.     However, Plaintiff did not receive any compensation in connection with the amount of equity in the Property that exceeded the amount of impositions thereon, nor does the Statute provide her with any method through which she can seek to recover that surplus equity.

11

49.     As a result of the proceedings in the Plaintiff's Foreclosure Case described above, Plaintiff was denied title, possession, use, and enjoyment of the Property, which was taken by the County for public use without just compensation as required by the Fifth Amendment to the United States Constitution (as applied to the County under the Fourteenth Amendment to the United States Constitution). Accordingly, Plaintiff's constitutional rights have been, and will continue to be, infringed upon unless and until she receives just compensation for the value of the Property of which she was deprived.

50.     Accordingly, the direct transfer provisions of the Statute were, and continue to be, unconstitutionally applied to Plaintiff by the County.

## VI.     CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action pursuant to Fed R. Civ. P. 23 on behalf of a class of all similarly situated individuals and entities (the "Class"), defined as follows:

> All persons (1) whose interest in real property located in Montgomery County, Ohio was directly transferred to another entity through the invocation and use of the procedures set forth in O.R.C. § 323.78 or O.R.C. § 323.73(G), and (2) the total value of that property exceeded the amount of the impositions on that property at the time the transfer occurred.
>
> Excluded from the Class are: (1) Defendant; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

52.     In addition, Plaintiff brings this action pursuant to Fed R. Civ. P. 23 on behalf of a subclass of all similarly situated individuals and entities (the "Subclass"), defined as follows:

> All persons (1) whose interest in real property located in Montgomery County, Ohio was directly transferred to another entity through the invocation and use of the procedures set forth in O.R.C. § 323.78, (2) with respect to whom the Board of Revision made a Valuation Finding, which found, by a preponderance of the evidence, the precise fair market value of

the property, and the amount of the impositions against that property, at the time the transfer occurred, and (3) the total value of that property exceeded the amount of the impositions on that property at the time the transfer occurred.

Excluded from the Subclass are: (1) Defendant; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

53. **Numerosity**: Upon information and belief, the Class and Subclass are each so numerous that joinder of all members is impractical. Although Plaintiff does not know the exact size of the Class and Subclass at this time, Plaintiff estimates the number of Class members to exceed 2,000, and the number of Subclass members to exceed 1,000, based on information available in the public record. The exact number of members in the Class can be ascertained through discovery, and can easily be identified through Defendant's records or by other means.

54. **Commonality and Predominance**: All members of the Class have been subject to and affected by a uniform course of conduct. Specifically, all Class members' real property was taken from them without payment of any compensation for the amount that the value of their properties exceeded the impositions due on their properties. Whether the loss of this surplus equity violated the Fifth Amendment to the United States Constitution (as applied to the County under the Fourteenth Amendment to the United States Constitution) is a question of law common to Plaintiff and all members of the proposed Class. This question also predominates over any individual questions with respect to Subclass members' claims.

55. **Typicality**: Plaintiff's claims are typical of the Class and the Subclass. Plaintiff's and Class members' claims arise from the same type of foreclosure proceedings before the Board of Revision instituted under the same statutory provisions. Moreover, the fair market values of

Plaintiff's and all Class members' properties exceeded the amount of impositions thereon at the time they were directly transferred.

56.     **Adequacy**: Plaintiff will adequately represent the interests of the Class and does not have any interests adverse to the Class. Plaintiff has retained competent counsel experienced in complex class action litigation.

57.     **Superiority**: A class action is the superior method for the quick and efficient adjudication of this controversy with respect to Plaintiff's and Class members' claims.  As noted above, Plaintiff's and Class members' claims are all based on the same legal and factual issues.  If individual Class members prosecuted separate actions it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct.

58.     **Maintainability**: This matter is maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(1)(A) because requiring each Class member to individually litigate the question of whether the County's conduct violated the Fifth and Fourteenth Amendments to the United States Constitution would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the County. This matter is also maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(2) because the County has acted and refused to act on grounds that apply generally to the Class, namely, its failure and outright refusal to pay just compensation to Plaintiff and Class members to account for the surplus equity that they held in their properties at the time the properties were directly transferred pursuant to O.R.C. § 323.78.  Whether the County's actions and inactions complained of herein violated the Fifth Amendment to the United States Constitution (as applied to the County under the Fourteenth Amendment to the United States Constitution) is an issue common to the viability of Plaintiff's

and all Class members' claims. Therefore, the declaratory and injunctive relief prayed for herein would be appropriate with respect to the Class as a whole.

**COUNT I**
**42 U.S.C. § 1983**
**(on behalf of Plaintiff and the Class and Subclass)**

59.     Plaintiff repeats and realleges paragraphs 1-58 with the same force and effect as though fully set forth herein.

60.     At all relevant times, the County was a "person" as interpreted in 42 U.S.C. § 1983.

61.     At all relevant times, there was in effect 42 U.S.C. §1983, which states in relevant part:

> Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States, or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

62.     The Fourteenth Amendment to the United States Constitution guarantees that no State shall "deprive any person of life, liberty or property, without due process of law."

63.     The Fifth Amendment's "Takings Clause" of the United States Constitution states that "nor shall private property be taken for public use, without just compensation." The Takings Clause is made applicable to the County by way of the Fourteenth Amendment to the United States Constitution.

64.     At all relevant times, the County had a duty and obligation to comply with the U.S. Constitution when conducting foreclosure proceedings pursuant to the Statute.

65.     Plaintiff and Class members each owned private property protected from public taking without just compensation by the Fifth Amendment to the United States Constitution.

15

66.     Plaintiff's and Class members' real property was directly transferred pursuant to O.R.C. § 323.78 or O.R.C. § 323.73(G).

67.     At the time each of Plaintiff's and Class members' real properties was directly transferred, the fair market value of that property exceeded the amount of impositions on that property.

68.     When Plaintiff's and Class members' properties were directly transferred, Plaintiff and Class members did not receive any compensation to account for the amount that the value of their properties exceeded the amount of impositions thereon.

69.     To date, Plaintiff and Class members have not received any compensation for the property of which they were deprived.

70.     Accordingly, through use of the direct transfer mechanisms of O.R.C. § 323.78 and/or O.R.C. § 323.73(G), Defendant, acting under color of law, took Plaintiff's and Class members' property without just compensation, and continues to refuse to provide just compensation to Plaintiff and Class members.

71.     As a direct and proximate result of Defendant's actions, Plaintiff and the Class have been, and continue to be, damaged in the amount by which the value of each property so transferred exceeded the total amount of the impositions attributable to that property.  In addition, Plaintiff's and Class members' constitutional rights have been, and will continue to be, infringed upon unless and until they receive just compensation for the property of which they were deprived.

72.     Plaintiff, individually, and on behalf of the Class, seeks an order declaring that the County's failure to pay any compensation to account for the difference between a given property's fair market value and the amount of impositions thereon at the time the property is directly transferred pursuant to O.R.C. § 323.78 and/or O.R.C. § 323.73(G) violates the Fifth Amendment

to the United States Constitution (as applied to the County under the Fourteenth Amendment to the United States Constitution).

73.     In other words, Plaintiff, individually, and on behalf of the Class, seeks a declaration that the direct transfer provisions of the Statute are unconstitutional as applied by the County in circumstances where the value of a foreclosed-upon property exceeds the amount of impositions thereon. To effectuate this declaratory relief, Plaintiff requests that the Court order the County to notify property owners whose property was directly transferred of the Court's ruling, and inform them of their available legal remedies to recover any surplus equity that they held in their properties at the time the properties were directly transferred pursuant to O.R.C. § 323.78 and/or O.R.C. § 323.73(G).

74.     Plaintiff, individually, and on behalf of the Subclass, also seeks recovery of the surplus equity that Plaintiff and Subclass members held in their properties at the time the properties were directly transferred pursuant to O.R.C. § 323.78.

## COUNT II
### Declaratory Judgment
### (28 U.S.C. §§ 2201, *et seq.*)
### (on behalf of Plaintiff and the Class)

75.     Plaintiff repeats and realleges paragraphs 1-74 with the same force and effect as though fully set forth herein.

76.     At all relevant times, there was in effect the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), which states, in relevant part:

> In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

17

77.     Plaintiff, individually, and on behalf of the Class, seeks an order declaring that the County's failure to pay any compensation to account for the difference between a given property's fair market value and the amount of impositions thereon at the time the property is directly transferred pursuant to O.R.C. § 323.78 and/or O.R.C. § 323.73(G) violates the Fifth Amendment to the United States Constitution (as applied to the County under the Fourteenth Amendment to the United States Constitution).

78.     In other words, Plaintiff, individually, and on behalf of the Class, seeks a declaration that the direct transfer provisions of the Statute are unconstitutional as applied by the County in circumstances where the value of a foreclosed-upon property exceeds the amount of impositions thereon.  To effectuate this declaratory relief, Plaintiff requests that the Court order the County to notify property owners whose property was directly transferred of the Court's ruling, and inform them of their available legal remedies to recover any surplus equity that they held in their properties at the time the properties were directly transferred pursuant to O.R.C. § 323.78 and/or O.R.C. § 323.73(G).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Alana Harrison, individually, and on behalf of the Class and Subclass, prays for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class and Subclass defined herein;

B.     Designating Plaintiff as representative of the Class and Subclass, and here undersigned counsel as Class Counsel;

C.     Declaring that the County's failure to pay any compensation to account for the difference between a given property's fair market value and the amount of impositions thereon at the time the property is directly transferred pursuant to O.R.C. § 323.78 and/or O.R.C. § 323.73(G) violates the Fifth

Amendment to the United States Constitution (as applied to the County under the Fourteenth Amendment to the United States Constitution);

D. Entering final declaratory judgment in favor of Plaintiff and the Class and against Defendant as set forth above;

E. Awarding Plaintiff and Subclass members monetary damages in an amount commensurate with the value of the surplus equity in their properties at the time they were directly transferred pursuant to O.R.C. § 323.78, plus interest as provided for by applicable law;

F. Awarding Plaintiff, the Class, and the Subclass reasonable attorney's fees and costs; and

G. Granting all such further and other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff Alana Harrison hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Michael A. Smith, Jr. (0097147)
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
(216) 373-0539 telephone
(216) 373-0536 facsimile
*notices@dannlaw.com*

Thomas A. Zimmerman, Jr.
(admitted *pro hac vice*)
Matthew C. De Re
(admitted *pro hac vice*)
Zimmerman Law Offices, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com
*firm@attorneyzim.com*

# EXHIBIT A

RESOLUTION NO. 11-1065
JULY 5, 2011

**A RESOLUTION PURSUANT TO SECTION 1724.10(A)(2) OF THE OHIO REVISED CODE DESIGNATING THE MONTGOMERY COUNTY LAND REUTILIZATION CORPORATION AS THE AGENCY FOR THE RECLAMATION, REHABILITATION, AND REUTILIZATION OF VACANT, ABANDONED, TAXFORECLOSED AND OTHER REAL PROPERTY IN THE COUNTY, DIRECTING THE CORPORATION TO ACT ON BEHALF OF AND IN COOPERATION WITH THE COUNTY IN EXERCISING THE POWERS AND PERFORMING THE DUTIES OF THE COUNTY UNDER CHAPTER 5722 OF THE OHIO REVISED CODE; DIRECTING THE PREPARATION OF AN AGREEMENT AND PLAN IN FURTHERANCE OF THESE MATTERS; AND AUTHORIZING RELATED MATTERS.**

WHEREAS, the County pursuant to division (A) of Section 5722.02 of the Ohio Revised Code has elected to adopt and implement the procedures set forth in Sections 5722.02 to 5722.15 of the Ohio Revised Code to facilitate the effective reutilization of nonproductive land situated within its boundaries.

WHEREAS, the County has caused the Montgomery County Land Reutilization Corporation (the "Corporation") to be organized as a county land reutilization corporation under Chapter 1724 of the Ohio Revised Code to act on behalf of and cooperate with the County in exercising the powers and performing the duties of a county with respect to land reutilization under Chapter 5722 of the Ohio Revised Code.

WHEREAS, subdivision (A)(2) of Section 1724.10 of the Ohio Revised Code authorizes a county to designate a county land reutilization corporation organized under Chapter 1724 of the Ohio Revised Code as its agency for the reclamation, rehabilitation, and reutilization of vacant, abandoned, tax-foreclosed or other real property in the county and for the exercise of the County's powers under Chapter 5722 of the Ohio Revised Code.



WHEREAS, in furtherance of the purposes of reclamation, rehabilitation, and reutilization of vacant, abandoned, tax-foreclosed or other real property in the County and the exercise by the Corporation on behalf of the County of the powers of the County under Chapter 5722 of the Ohio Revised Code, this Board also desires to enter into an agreement and plan with the Corporation (the "Agreement and Plan") to accomplish the foregoing.

BE IT THEREFORE RESOLVED by the Board of County Commissioners of Montgomery County, Ohio, that:

**PAGE 2**
**RESOLUTION NO. 11-1065**
**JULY 5, 2011**

Section 1. Pursuant to subdivision (A)(2) of Section 1724.10 of the Ohio Revised Code, the County acting by and through this Board, hereby designates the Corporation as its agency for the reclamation, rehabilitation, and reutilization of vacant, abandoned, tax-foreclosed or other real property in the County.

Section 2. Pursuant to Section 1724.04 and division (B) of Section 5722.02 of the Ohio Revised Code, this Board hereby authorizes the Corporation to exercise on its behalf the powers granted to the County under Chapter 5722 of the Ohio Revised Code, subject to any limitations therein on a county land reutilization corporation.

Section 3. In furtherance of the designation of the Corporation by this Board as the agency for the reclamation, rehabilitation, and reutilization of vacant, abandoned, tax-foreclosed or other real property in the County pursuant to division (A)(2) of Section 1724.10 of the Ohio Revised Code and as its agency for exercise of the powers granted to the County under Chapter 5722 of the Ohio Revised Code, this Board hereby directs the Corporation to prepare or cause to be prepared for approval and execution by this Board an agreement and plan between the Corporation and the County as authorized by division (B) of Section 1724.10 of the Ohio Revised Code to provide for, among other things, a plan of reclamation, rehabilitation, and reutilization of vacant, abandoned, tax foreclosed, or other real property and the extent to which the Corporation will participate as the agency of the County in carrying out the plan.

Section 4. The Clerk of this Board is hereby authorized and directed to deliver a certified copy of this resolution to the Auditor of the County, the Treasurer of the County, and the Prosecuting Attorney of the County.

Section 5. This resolution shall take effect and be in force immediately upon its adoption.

BE IT FURTHER RESOLVED that the Clerk of Commission certify this Resolution and make an imaged copy of this resolution available on the Montgomery County, Ohio, website at http://www.mcohio.org/.

PAGE 3
RESOLUTION NO. 11-1065
JULY 5, 2011

Ms. Dodge moved the adoption of the foregoing resolution. It was seconded by Mr. Foley, and upon call of the roll the following vote resulted:

Ms. Dodge, aye; Mr. Foley, aye; Mrs. Lieberman, aye: Carried.

-----------------------------------------

I hereby certify that the foregoing is a true and correct copy of a resolution duly adopted by the Board of County Commissioners of Montgomery County, Ohio, the 5th day of July, 2011.

THE BOARD OF COUNTY COMMISSIONERS HEREBY FINDS AND
DETERMINES THAT ALL FORMAL ACTIONS RELATIVE TO THE
ADOPTION OF THIS RESOLUTION WERE TAKEN IN AN OPEN
MEETING OF THIS BOARD OF COUNTY COMMISSIONERS, AND THAT
ALL DELIBERATIONS OF THIS BOARD OF COUNTY COMMISSIONERS,
AND OF ITS COMMITTEES, IF ANY WHICH RESULTED IN FORMAL
ACTION, WERE TAKEN IN MEETINGS OPEN TO THE PUBLIC, IN FULL
COMPLIANCE WITH APPLICABLE LEGAL REQUIREMENTS, INCLUDING
SECTION 121.22 OF THE REVISED CODE.

Gayle L. Ingram, Clerk
Board of County Commissioners
Montgomery County, Ohio

# EXHIBIT B

**RESOLUTION NO. 11-1640**
**NOVEMBER 1, 2011**

**A RESOLUTION PURSUANT TO OHIO REVISED CODE SECTION 1724.10(A)(2) APPROVING AND AUTHORIZING THE EXECUTION AND DELIVERY OF AN AGREEMENT AND PLAN WITH THE MONTGOMERY COUNTY LAND REUTILIZATION CORPORATION AS THE COUNTY'S AGENCY FOR EXERCISING THE POWERS AND PERFORMING THE DUTIES OF THE COUNTY UNDER CHAPTER 5722 OF THE OHIO REVISED CODE FOR THE RECLAMATION, REHABILITATION, AND REUTILIZATION OF VACANT, ABANDONED, TAX-FORECLOSED AND OTHER REAL PROPERTY IN THE COUNTY.**

**WHEREAS**, in Resolution 11-1064 on July 5, 2011, the Commissioners authorized the incorporation of the Montgomery County Land Reutilization Corporation ("Land Bank") under Chapter 1724 of the Ohio Revised Code.

**WHEREAS**, in Resolution 11-1065 on July 5, 2011, the Commissioners designated the Land Bank as the agency for reclamation, rehabilitation, and reutilization of vacant, abandoned, tax foreclosed and other real property in the County, and directed the preparation of an agreement and plan in furtherance of such matters.

**WHEREAS**, on October 18, 2011, the Land Bank Board authorized the form of the Agreement & Plan and directed its officers deliver to this Board for final approval.

**WHEREAS**, the Agreement & Plan permits the Land Bank to exercise the powers of the County under Chapter 5722 of the Ohio Revised Code in furtherance of its mission to reclaim, rehabilitate, and reutilize vacant, abandoned, tax foreclosed and other real property in the County.

**BE IT THEREFORE RESOLVED** by the Board of County Commissioners, Montgomery County, Ohio, that:

Section 1. Pursuant to division (B) of Section 1724.10 of the Ohio Revised Code, the Agreement & Plan between the Board and the MontgomeryCounty Land Reutilization Corporation is approved.



Section 2. The Chair of the Board is authorized to execute the Agreement & Plan. A copy of this resolution, together with the fully executed Agreement & Plan, shall be delivered to the Auditor of the County, the Treasurer of the County, and the Prosecuting Attorney of the County.

Section 4. This resolution shall be in full force and effect from and immediately upon its adoption.

**BE IT FURTHER RESOLVED** that the Clerk of Commission certify this Resolution and make an imaged copy of this resolution available on the Montgomery County, Ohio, website at http://www.mcohio.org/.

**PAGE 2**
**RESOLUTION NO. 11-1640**
**NOVEMBER 1, 2011**

Mr. Foley moved the adoption of the foregoing resolution. It was seconded by Ms. Dodge, and upon call of the roll the following vote resulted:

Mr. Foley, aye; Ms. Dodge, aye; Mrs. Lieberman, aye: Carried.

----------------------------------------

I hereby certify that the foregoing is a true and correct copy of a resolution duly adopted by the Board of County Commissioners of Montgomery County, Ohio, the 1st day of November, 2011.

THE BOARD OF COUNTY COMMISSIONERS HEREBY FINDS AND DETERMINES THAT ALL FORMAL ACTIONS RELATIVE TO THE ADOPTION OF THIS RESOLUTION WERE TAKEN IN AN OPEN MEETING OF THIS BOARD OF COUNTY COMMISSIONERS, AND THAT ALL DELIBERATIONS OF THIS BOARD OF COUNTY COMMISSIONERS, AND OF ITS COMMITTEES, IF ANY WHICH RESULTED IN FORMAL ACTION, WERE TAKEN IN MEETINGS OPEN TO THE PUBLIC, IN FULL COMPLIANCE WITH APPLICABLE LEGAL REQUIREMENTS, INCLUDING SECTION 121.22 OF THE REVISED CODE.

Gayle L. Ingram, Clerk
Board of County Commissioners
Montgomery County, Ohio

REFER TO RESOLUTION NO. 11-1640
DATED 11/1/11

**AGREEMENT AND PLAN**

**OF RECLAMATION, REHABILITATION, AND REUTILILZATION OF VACANT, ABANDONED, TAX-FORECLOSED OR OTHER REAL PROPERTY IN MONTGOMERY COUNTY, OHIO**

THIS AGREEMENT AND PLAN, entered into as of the _1st_ day of _October_ 2011 (collectively, the "Agreement"), by and between the County of Montgomery, Ohio (the "County"), a county organized and existing under the Constitution and laws of the State of Ohio (the "State") and the Montgomery County Land Reutilization Corporation (the "Corporation") a county land reutilization corporation organized and existing as a corporation not for profit under the laws of the State;

WHEREAS, in accordance with Section 1724.10(A)(2) of the ORC, the Corporation has been designated as the agency for the reclamation, rehabilitation, and reutilization of vacant, abandoned, tax-foreclosed, or other real property in the County; and

WHEREAS, the County and the Corporation desire to enter into an agreement pursuant to division (B) of Section 1724.10 of the ORC to provide for, among other things, a plan for the County of reclamation, rehabilitation, and reutilization of vacant, abandoned, tax-foreclosed, or other real property in the County; and

WHEREAS, the Corporation has prepared a plan (the "Plan") of reclamation, rehabilitation, and reutilization of vacant, abandoned, tax-foreclosed, or other real property in the County; and

WHEREAS, the Corporation and the County desire to incorporate the terms and provisions of the Plan into this Agreement so that this Agreement will embody and constitute

the plan of reclamation, rehabilitation, and reutilization of vacant, abandoned, tax-foreclosed, or other real property in the County provided for under division (B) of Section 1724.10 of the Revised Code.

NOW, THEREFORE, the County and the Corporation do hereby agree as follows:

## ARCTICLE I

### *The Plan Generally*

Section 1.1. The Plan Purposes Generally. The Plan for the Corporation, as the sole agency for the County designated to carry out the Plan, shall be the following:

a) To promote and facilitate the reclamation, rehabilitation, and reutilization of vacant, abandoned, tax-foreclosed, or other real property in the County to the fullest extent possible within the legal and fiscal limitations applicable to the Corporation;

b) To efficiently hold and manage vacant, abandoned, or tax-foreclosed real property pending its reclamation, rehabilitation, and reutilization;

c) To assist governmental entities and other nonprofit or for-profit persons to assemble, clear, and clear the title of vacant, abandoned, or tax-foreclosed real property;

d) To promote economic and housing development in the County or region;

e) To advance, encourage, and promote the industrial, economic, commercial, and civic development of a community or area of the County; and

f) In furtherance of the preceding purposes in items a) through e), and not as a limitation on any of the powers of the Corporation under Chapter 1724 of the ORC, to exercise any and all of the powers conferred upon a county under Chapter 5722 of the ORC and any ancillary or related statutes.

Section 1.2 <u>Intention of Parties with respect to Implementation of Plan.</u> In connection with implementation of this Plan by the Corporation, it is the intention of the parties hereto to work cooperatively with other governmental entities and persons, especially with those that have elected to exercise the powers set forth in Chapter 5722 of the ORC in pursuit of purposes similar to those of this Plan.

Section 1.3 <u>Compliance with Applicable Zoning and Planning Laws.</u> Implementation of the Plan shall be effected in compliance with all zoning and planning laws applicable to the real property which is the subject of action under this Plan.

Section 1.4 <u>Construction of Provisions of the Plan.</u> All provisions of this Plan shall be liberally construed, subject to any limitations thereon in the ORC applicable to the Corporation or the County. If in any provision in this Agreement and Plan reference is made to "real property" without more, whether by use of such term or others of similar import, such reference shall be understood or interpreted to mean "real property within the County."

## **ARTICLE II**

### *Actions in Furtherance of the Plan*

In the furtherance of promoting and facilitating the reclamation, rehabilitation, and reutilization of vacant, abandoned, tax-foreclosed, or other real property in the County, the Corporation, as a community improvement corporation organized under and for the purposes of Chapter 1724 of the ORC and designated to act as the electing subdivision (as defined in division (F) of Section 5722.01 of the ORC) for and on behalf of the County, may exercise any or all of the powers authorized in Sections 1724.02 and 1724.10 and Chapter 5722 of the ORC, including, but not limited to the following:

a) To purchase, receive, hold, manage, lease, lease-purchase, or otherwise acquire and to sell, convey, transfer, lease, sublease, or otherwise dispose of real property, together with such rights and privileges as may be incidental and appurtenant thereto and the use thereof;

b) To acquire, reclaim, manage, or contract for the management of improved or unimproved and underutilized real property for the purpose of constructing industrial plans, other business establishments, or housing thereon, or causing the same to occur, for the purpose of assembling and enhancing utilization of the real property;

c) To serve as an agent for grant applications and the administration of grants or to make applications as principal for grants to the Corporation;

d) To engage in code enforcement and nuisance abatement, including, but not limited to, cutting grass and weeds, boarding up vacant or abandoned structures, and demolishing condemned structures on properties which the Corporation owns or in which it has legal interest whether or not subject to a delinquent tax or assessment lien, or property for which a municipal corporation or township has contracted with the Corporation to provide code enforcement or nuisance abatement assistance;

e) To purchase tax certificates at auction, negotiated sale or from a third party who purchased and is a holder of one or more tax certificates issued pursuant to Sections 5721.30 to 5721.43 of the ORC;

f) To be assigned a mortgage on real property from a mortgagee in lieu of acquiring such real property subject to a mortgage;

g) To borrow money for any of the purposes of a county land reutilization corporation by means of loans, lines of credit, or any other financial instruments or securities, including the issuance of its bonds, debentures, notes, or other evidences of indebtedness, whether secured or unsecured, and to secure the same by mortgage,

pledge, deed of trust, or other lien on its property, franchises, rights, and privileges of every kind and nature or any part thereof or interest therein;

h) To mortgage, pledge, or otherwise encumber any real property acquired by the Corporation in the furtherance of its purposes;

i) To make loans to any person, firm, partnership, corporation, joint stock company, association, or trust for the purpose of furthering the purposes of the Corporation, and to establish and regulate the terms and conditions with respect to any such loans;

j) To acquire nonproductive land (as defined in division (F) of Section 5722.01 of the ORC) through the exercise, and as electing subdivision on behalf of the County, of the powers set forth in Chapter 5722 of the ORC;

k) To accept a conveyance in lieu of foreclosure of any delinquent land from the proper owners thereof and to accept from the County Auditor properties escheated to the State both before and after the execution and delivery of this Agreement;

l) To enter into agreements with municipal corporations and townships within the boundaries of the County for implementation within such municipal corporations and townships for the purposes of the Corporation and the purposes of Chapter 5722 of the ORC;

m) To establish data bases identifying the vacant, abandoned, tax-foreclosed and nonproductive real properties within the County which are in need of reclamation, rehabilitation, and reutilization and to enter into agreements with municipal corporations or townships for cooperative sharing and use of such data bases;

n) To assist municipal corporations and townships in preparing plans for acquiring vacant, abandoned or tax-foreclosed real properties within their boundaries and for the reclamation, rehabilitation and reutilization of such properties so as to return

such properties to productive use and thereby to foster economic and housing growth within the County;

o) To prepare, or to participate in or partner with post-secondary educational institutions or other entities for the preparation of studies or analyses of the causes of or contributing factors in vacancy, abandonment and tax delinquency of real property in the County and the methods and manner of reclaiming, rehabilitating and reutilizing vacant, abandoned, tax-foreclosed and nonproductive real property in the County;

p) To partner with the State and agencies of the State in the pursuit and implementation of the purposes of the Corporation;

q) To develop, implement and maintain programs designed to creatively revitalize property such as deconstruction and recycling of building and other materials, urban forestry, agriculture, greenhouses, green infrastructure, water retention, parks, human resource programs such as workforce development, and other job creation or vocational programs other than governmental workforce development programs and faith-based initiatives; and

r) To take such other actions that are authorized under Ohio law and are consistent with and will facilitate the implementation of the purposes of the Corporation.

## ARTICLE III

### *Miscellaneous*

Section 3.1. Amendments to the Plan. This Agreement and the Plan may be amended and supplemented from time to time provided that all such amendments and supplements shall be in writing, shall be duly approved by the Corporation and the County and shall be executed by the property officers of each.

Section 3.2. No Prohibition on Independent Exercise of Governmental Powers. No provision, term or covenant contained in this Agreement and Plan shall be construed as prohibiting or limiting the County from independently exercising any and all powers it may have under the Constitution or laws of the State.

Section 3.3 Fiscal Matters. Nothing in this Agreement and Plan shall be construed as requiring the County, and the County shall not be required, to make financial contributions to the Corporation or shall be construed as permitting the Corporation to obligate the County except as expressly set forth in this Agreement and Plan; provided, however, that nothing in this Section shall be construed as a limitation on, or a prohibition on acting pursuant to, any terms and provisions in Ohio law providing for the fiscal matters of the Corporation, including, but not limited to, its receipt of penalties and interest collected on Current Year Unpaid Taxes and on Current Year Delinquent Taxes (each as defined in division (D) of ORC 321.341) to the extent permitted under ORC 321.341 and other applicable Sections of the Revised Code. In such regard, but only to the extent that the penalties and interest on such Current Year Unpaid Taxes and on Current Year Delinquent Taxes have been collected by the Treasurer of the County and deposited in accordance with division ( C ) of ORC 321.341 in the County Land Reutilization Corporation Fund established in accordance with ORC 321.263, the Board of County Commissioners of Montgomery County shall appropriate the portion or all of such penalties and interest so deposited as shall have been requested by the Corporation.

Section 3.4 Term of Agreement. The term of this Agreement shall commence on the date first above written and shall continue in effect thereafter unless terminated in accordance with this Section 3.4. Each of the parties to this Agreement may terminate this Agreement and Plan upon written notice to the other party setting forth the termination date of the Agreement and Plan. The termination date (the "Termination Date") specified in the notice shall not be any earlier than the first day of the calendar month that immediately succeeds the first anniversary of the giving of written notice of termination. From and after the Termination Date no further actions, agreements, contract, liabilities or obligations shall be initiated or incurred

pursuant to this Agreement and Plan, but any action, agreement, contract, liability or obligation which has been commenced, entered into, initiated or incurred prior to the Termination Date shall not be affected by such termination and this Agreement and Plan shall remain in full force and effect as to any such action, agreement, contract, liability or obligation, and the Corporation shall continue as the agency of the County under this Agreement and Plan and the designation by resolution of the Corporation as agency of the County made by the Board of County Commissioners of Montgomery County for the purposes of full performance of all such actions, agreements and contracts, liabilities or obligations.

Section 3.5. Notices. All written notices required to be given by one of the parties hereto to the other party under this Agreement and Plan or under any sections of the ORC that relate to the function of the Corporation as the designated agency of the County for purposes of this Agreement and Plan shall, unless otherwise specified herein or in the ORC, be deemed duly given by delivering such written notice to the following electronic mail addresses of the intended recipient party or to the following first class mail delivery address of the intended recipient party to the attention of the proper party:

IF TO THE COUNTY:

*First Class Mail:*
Board of Montgomery County Commissioners
451 W. Third Street
Dayton, Ohio 45422

*Email:*

IF TO THE CORPORATION:

*First Class Mail:*
Montgomery County Land Reutilization Corporation
c/o Carolyn Rice- Montgomery County Treasurer's Office

451 W. Third Street

Dayton, Ohio 45422-1475

*Email: riceca@mcohio.org*

Any party may change its notice address upon written notice of such change to the other party; provided, however, that non-receipt of any notice by the recipient party shall not affect the efficacy of the notice if non-receipt was caused by a change in the recipient's notice address of which such recipient had not notified the party giving notice in accordance with this Section 3.5.

IN WITNESS WHEREOF, the County and the Corporation, by their duly authorized officers, have caused this Agreement and Plan to be executed as of the day and year first above written.

COUNTY LAND REUTILIZATION CORPORATION

By: *Carolyn Rice*

Attest: *Angela Lielly*

COUNTY OF MONTGOMERY, OHIO

By: *Judreh A. Fulton*

EXHIBIT C

**MONTGOMERY COUNTY LAND REUTILIZATION CORPORATION**

# PROPERTY POLICY GUIDELINES



Approved April 21, 2015

# Contents

**Page**

1. **Introduction**                                                         **3**

2. **Acquisition**                                                          **4**

3. **Disposition**                                                        **5-6**

4. **Consideration**                                                        **7**

5. **Side (Adjoining)  Lot Disposition**                                    **8**

6. **Land Banking**                                                       **9-10**

7. **Donated Property**                                                    **11**

### 1. Introduction

This document is intended to provide a working policy framework or guidelines for the Montgomery County Land Reutilization Corporation (MCLRC) also known as the Land Bank to manage its property acquisition, disposition, and banking activities. These activities are being provided to benefit "Participating Communities" (those communities that have entered into a Memorandum of Understanding with the MCLRC). In undertaking its mission and these activities, the MCLRC shall at all times be consistent with the authority granted by the Constitution of Ohio, the laws of the state of Ohio, the articles of incorporation and bylaws of the Montgomery County Land Reutilization Corporation, and the public purposes set forth therein.

## 2.  Acquisition

Properties acquired by the Montgomery County Land Reutilization Corporation (MCLRC) shall be guided by the following policies:

1.  Properties should only be acquired to fulfill the need of a program or participating community request.

2.  All properties acquired must be maintained in a manner supportive of their intended disposition, and be accompanied by dedicated financial resources that are budgeted, committed through agreement, or are anticipated as a revenue source to offset costs.

3.  The Land Bank has an expectation that community requests for its support are founded upon plans. These plans should address community needs that:
    a.  act as catalyst for further development
    b.  support infrastructure, public and green space development
    c.  reduce blight in the community.

4.  Land Bank programs will pursue properties that are:
    a.  eligible for tax foreclosure
    b.  vacant and abandoned
    c.  foreclosed or in receiverships
    d.  available for donation
    e.  available for immediate reuse
    f.  located in reinvestment areas that support strategic neighborhood stabilization and revitalization plans
    g.  a part of a land assemblage development plan by either the land bank or partnering entities within participating communities. (e.g. land banking)
    h.  able to generate operating revenues
    i.  environmentally characterized where such a concern exists.

### 3. Disposition

The disposition of properties shall be based upon the participating community's intended or planned use. The MCLRC shall also consider the applicant / purchaser of the property, and their ability to adequately maintain, repair, renovate and / or do those things necessary as a responsible property owner. The disposition of any given property will be based upon the community, MCLRC, and plan objectives, and the manner in which a program is conducted (i.e. application, bid, request, etc.). The Staff of the MCLRC shall retain authority to use any means it deems necessary to evaluate applicants / purchasers ability to comply with program criteria.

Priorities for Use of Property

The goal of the MCLRC in dispositioning properties is to support the community's plans, needs, and desires. With that goal in mind it is recognized that its impact on the outcome of others plans is limited by its role. However, in executing its programs the Land Bank has as its objective the repositioning of properties for productive use, and to responsible ownership. To that end the following policies have been identified to serve as a means of establishing criteria for participants in Land Bank programs. These criteria include the following:

1) Individuals, entities, and / or entities controlled by individuals that had an ownership interest in the property at the time that the property's tax foreclosure was initiated shall not be eligible to apply / purchase the property.

2) The applicant / purchaser must not own any real property that has or is:
   a. any un-remediated citation or violation of the state and local codes and ordinances
   b. tax delinquent
   c. foreclosed upon.

3) The property must not have been used by the applicant / purchaser or a family member as his or her personal residence at any time preceding the submission of application (except in rental cases).

4) Where rehabilitation of a property by the applicant / purchaser is a condition of the transfer agreement, the requirement for such rehabilitation shall be according to standards established by the local

unit of government and Land Bank, and completion shall be a condition to the release of title.

5) If code or ordinance violations exist with respect to the property at the time of the transfer, the applicant / purchaser shall correct the violations within a specified period of time.

6) Individuals and / or entities that falsify documents to the Land Bank shall be suspended from further participation in Land Bank programs.

### 4. Consideration

The following factors shall constitute general guidelines for determination of the consideration to be received by the MCLRC for the transfer of properties. In each and every transfer of real property the MCLRC shall require good and valuable consideration in an amount determined by the MCLRC in its sole discretion.

1) All property that is transferred shall be based upon some form of consideration. The consideration to be provided by the applicant / purchaser to the Land Bank may take the form of cash, performance of contractual obligations, imposition of restrictive covenants, or other obligations and responsibilities of the applicant / purchaser, or any combination thereof as determined by the Land Bank.

2) Each program may have a different objective and therefore the means of establishing consideration.

3) In certain instances consideration may be equal to the fair market value of the property (as determined by MCLRC), or charges and expenses attributable to the property.

4) Consideration shall be paid in full at the time of application, or transfer based upon the program.

# 5. Side (Adjoining) Lot Disposition

Individual parcels of property may be acquired by the Montgomery County Land Reutilization Corporation, and transferred to individuals in accordance with the Tax Foreclosure Sponsorship Program.

1. Qualified Property
   a) The property shall be vacant unimproved real property.
   b) The property shall be physically contiguous to adjacent occupied (owner) residential property with not less than a 50% common boundary line on one side (left or right).
   c) Intended use for lot is disclosed.

2. Applicant / Purchasers:
   All applicant / purchasers must:
   a) hold title on the contiguous property.
   b) not own any real property (including both the contiguous lot and all other property within the county) that is subject to any un-remediated citation or violation of state / local codes / ordinances.
   c) not own any real property (including both the contiguous lot and all other property in the county) that is tax delinquent.
   d) not have been the prior owner of any real property that was the subject of a foreclosure proceedings two years prior to the disposition.
   e) Individuals, entities, and / or entities controlled by individuals that had an ownership interest in the property at the time that the property's tax foreclosure was initiated shall not be eligible to apply / purchase the property.

3. Conveyance
   Conveyance fees / charges for a side lot shall be set by MCLRC staff to be consistent with the sustainability objectives of the organization.  Title insurance is not included in the sale price, and deeds shall be as a Quit Claim.

4. Additional Requirements
   In the event that multiple adjacent owner-occupied property owners desire to acquire the same side lot, the property will be provided on a first come basis as established by the submission of a fully completed application.  If the first applicant cannot be determined, then the property will be sold based on the highest offer.

## 6.  Land Banking

The MCLRC Land Banking program is intended to provide acquisition, maintenance, and disposition services for participating communities and community development corporations supporting these communities. The purpose is to hold title to such properties pending future use. Banking of properties by the MCLRC shall at all times be solely within the discretion of the MCLRC, and nothing in this policy shall be deemed to require the MCLRC to take title to any properties nor to limit the discretion of the MCLRC in negotiating the terms of Banking any participating property.

All property conveyances undertaken by the MCLRC in its land banking program must comply with the requirements and procedures set forth below. The MCLRC shall acquire, maintain, and hold the property subject only to the terms established in the Land Banking agreement.

Following the acquisition of any property(s), the MCLRC shall have the right, but not the obligation, to maintain, repair, demolish, clean, and grade the property and perform any and all other tasks and services to the property as the MCLRC may deem necessary and appropriate in its sole discretion to protect the public, its interests, and the Land Banking agreement.

The following is a listing of guidelines that the Land Bank will consider in Banking properties.

1.  The Land Banking service shall be for the benefit of participating communities.

2.  The property must:
    a.  not be occupied by any party or parties.
    b.  be located in Montgomery County, Ohio.
    c.  be free of any and all liens for ad valorem taxes, special assessments, and other liens or encumbrances in favor of local, state or federal government entities.
    d.  be free of all outstanding mortgages and security instruments.

3.  The Banking service should be for a term that does not exceed 5 years.

4.  The MCLRC should be reimbursed for all costs incurred in relationship to the property.

5.  The participating community shall have a right to repurchase the property from the MCLRC at any time by giving written notice and upon satisfaction of all the terms in the agreement.

6.  The right of repurchase may include a payment to the MCLRC in an amount equal to:

    a.  all expenditures of the MCLRC (whether made directly by the MCLRC or through payments to a third party contractor) in connection with the subject property incurred subsequent to the date of conveyance to the MCLRC, and

    b.  an amount determined by the MCLRC as its average indirect costs, on a per parcel basis, of holding its portfolio of properties.

7.  The MCLRC may as a part of its agreement imposes a condition that at any time within the term of the agreement requires the participating community to repurchase the property. This will be accomplished by giving written notice including the amount of the Purchase Price. The participating community must exercise its right of repurchase, and close the reconveyance of the property within sixty (60) days of receipt of such notice. Failure to exercise and close upon repurchase requirement within such period of time shall result in a termination of all rights to the subject property, and acceleration of all costs incurred by the MCLRC.

**7. Donated Property**

Properties acquired by the MCLRC through donation shall be guided by the following policies:

1. Brownfield properties should not be accepted without having been characterized by a Phase One Assessment.

2. Properties with immediate maintenance requirements will not be accepted without a funding source secured for such maintenance.

3. The MCLRC will not determine the value of the donated property for the purpose of tax benefits, but will provide a letter describing the property donated.

4. All donated properties requiring processing as a Deed in Lieu property must be approved by the MCLR's Board of Directors by a majority vote.

# EXHIBIT D

**ELECTRONICALLY FILED**
**COURT OF COMMON PLEAS**
**Monday, August 20, 2018 10:27:43 AM**
**CASE NUMBER: 2017 BR 00653 Docket ID: 32523677**
**RUSSELL M JOSEPH**
**CLERK OF COURTS MONTGOMERY COUNTY OHIO**

## IN THE BOARD OF REVISION
## MONTGOMERY COUNTY, OHIO

CAROLYN RICE, as Treasurer of      :      Case No. **2017** BR 653
Montgomery County, Ohio,
        [Certificate Holder]      :

         Plaintiff,      :

vs.      :      **FINDING OF FACT AS**
     **TO VALUE**

Frances C. Brooks , et al.,      :

         Defendants.      :

---

This matter came on to be heard upon the Petition of:

    _X_ the Treasurer
    ___ the Certificate Holder
    ___ Owner or Interested Party
    ___ the Board, Sua Sponte,

pursuant to O.R.C. 323.71, to determine the fair market value of the parcel(s) which are the subject of the proceeding and to determine whether such value exceeds the combined amount of taxes, interest, penalties, assessments, charges and costs ("Impositions") levied against such parcel(s). Pursuant to O.R.C. 323.71 it is a rebuttable presumption that the Auditor's value is the fair market value of the parcel(s). Based on the latest duplicate, the Auditor's combined valuation for the subject parcel(s) is/are:

         Auditor's Value:    $ 22,600
         Total Impositions   $ 19,664.44

Based on the preponderance of available evidence, the Board finds that the fair market value of the parcel(s) is/are $ 22,600 .

**IT IS SO ORDERED:**

_Linda Martin_

County Treasurer/appointee
Date: _6-22-18_

_____
County Auditor/appointee
Date:_____

_Nancy A. Simpson_
County Commissioner/appointee
Date: _6-22-18_

Andrew M. Engel (0047371)
Andrew M. Engel Co., LPA
15000 Madison Avenue
Lakewood, OH 44107
(937) 477.9083 telephone
(216) 373-0536 facsimile
aengel@amengellaw.com

*Counsel for Plaintiff, the putative Class, and the putative Subclass*